IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KENNETH ARNOLD,

    Plaintiff,

  v.

BLUE SHIELD OF CALIFORNIA,

    Defendant.

                                        /

No. C 12-02115 WHA

**ORDER DENYING SUMMARY JUDGMENT, ALLOWING LIMITED DISCOVERY AND VACATING HEARING**

## INTRODUCTION

In this ERISA action, defendant moves for summary judgment. Plaintiff opposes the motion and requests that judgment be entered in plaintiff's favor or, in the alternative, requests leave to take limited discovery. For the reasons explained below, defendant's motion is **DENIED**, plaintiff's request for judgment is **DENIED**, and plaintiff's request for leave to take limited discovery is **GRANTED**. The November 29 hearing is **VACATED.**

## STATEMENT

"A.A.," daughter of plaintiff Kenneth Arnold, was covered under plaintiff's Blue Shield of California health insurance plan. Under the plan, if a subscriber obtains medical care from a non-participating provider, the subscriber pays for the treatment privately and then submits a claim to Blue Shield for reimbursement.

### 1.  A.A.'S BACKGROUND.

A.A. has been diagnosed with bipolar disorder, borderline personality disorder, and anorexia (AR 1781). Shortly after beginning college in 2009, she suffered a manic break and returned home for outpatient treatment with psychiatrist Lynn Ponton, M.D. During the outpatient therapy, which lasted from November, 2009, until March, 2010, Dr. Ponton indicated that A.A. was at a low "imminent risk of suicide or serious self-injury," and that her condition had improved since returning from college (AR 143–83). Nevertheless, A.A.'s condition declined while she was being treated by Dr. Ponton. In March, 2010, Dr. Ponton raised the possibility of psychiatric hospitalization for A.A. (AR 1378–80). On April 2, 2010, Dr. Ponton wrote that A.A.'s expression of suicidality was "dangerous" and that her situation required "the constant monitoring and support of an intensive inpatient treatment program" (AR 1382).

### 2.  ADMISSION TO MCLEAN HOSPITAL.

On April 5, 2010, A.A. was admitted to a residential psychiatric treatment facility at McLean Hospital (AR 133–37). During her stay, A.A. made a suicide attempt using a shard of glass she found during a walk outside the facility (AR 1383–84). Her condition eventually improved, and she was discharged from the treatment facility on July 27, 110 days after she was admitted (AR 133–137).

The residential treatment facility was a self-pay program that did not participate in plaintiff's Blue Shield insurance plan. Plaintiff paid $115,000 out-of-pocket, which covered the full cost of treatment at McLean, and subsequently submitted a claim to defendant (AR 126–32, 1685).

### 3.  DENIAL OF THE CLAIM AND PLAINTIFF'S APPEAL.

Defendant initially denied plaintiff's claim as untimely, and plaintiff's insurance broker initiated an appeal with defendant. Defendant chose not to rely on timeliness as a basis for denial, and instead assigned the appeal to Tim Ford, a senior clinical coordinator in its Appeals and Grievances Department (Ford Decl. ¶¶ 78–79). Mr. Ford reviewed the file with a nurse practitioner supervisor, and determined that a clinical review of the appeal would be necessary (*id.* ¶ 86).

2

1   Because defendant had no licensed psychiatrists who could review the appeal, it sent the
2   matter to Advanced Medical Reviews (AMR), a third-party medical review organization (*id*. ¶¶
3   100–02).  An AMR reviewer who was a practicing psychiatrist then reviewed the file supplied
4   by defendant (AR 1780–84).  At an August 23 case management conference, the Court urged
5   defendant to provide the identity of the AMR reviewer to plaintiff.  Defendant has declined to do
6   so.

7   The AMR reviewer concluded that A.A.'s first ten days of residential care were
8   medically necessary, but that the remaining 100 were not and that she could have been safely
9   moved to a lower level of care (AR 1783).  The AMR reviewer based this conclusion on several
10  factors, including:  (1) the lack of documentation of suicidal intent or plan; (2) the notes of
11  A.A.'s treating psychiatrist indicated that after 10 days her suicidal ideation had decreased
12  markedly; (3) A.A. was allowed to leave the facility on a "weekend pass" while still reporting
13  suicidal thoughts; and (4) A.A. was discharged even though some suicidal thinking remained
14  (AR 1781–84).

15  Defendant presented the appeal documentation and the AMR reviewer's report to Blue
16  Shield medical director Norman Kato, M.D., for further review (AR 1793–94).  Dr. Kato also
17  concluded that A.A. could have been discharged from McLean after ten days, and that her
18  continuing medical treatment there was neither medically necessary nor covered by the plan.

## ANALYSIS

20  Summary judgment is proper when the pleadings and the evidence in the record "show
21  that there is no genuine issue as to any material fact and that the moving party is entitled to
22  judgment as a matter of law."  FRCP 56(c).  An issue is genuine only if there is sufficient
23  evidence for a reasonable fact-finder to find for the non-moving party, and material only if the
24  fact may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49
25  (1986).

26  **1.   STANDARD OF REVIEW.**

27  When a benefit plan grants authority to the administrator of the plan to determine
28  eligibility for benefits, the Court reviews the administrator's denial of the benefits for abuse of

3

discretion. *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). Here, the Blue Shield plan agreement plainly states that Blue Shield has "the power and discretionary authority to . . . determine eligibility to receive Benefits under [the] Plan" (AR 60). This order finds that this language is sufficient to make an abuse of discretion standard of review the appropriate starting point.

When, however, the same entity that funds the plan also evaluates claims, the plan administrator faces a structural conflict of interest. *Id.* at 630. "Application of the abuse of discretion standard therefore requires a more complex analysis. . . . [And, ] a reviewing court must take into account the administrator's conflict of interest as a factor in the analysis." *Id.* at 631 (citation omitted).

Other factors that affect the reasonableness of a plan administrator's denial of benefits include:

> the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts "with all of the relevant evidence[,]" and whether the administrator considered a contrary SSA disability determination, if any.

*Ibid.*

Defendant concedes that in this instance, the administrator functioned as both the decisionmaker as to benefits eligibility and the funding source of any benefits due, creating a structural conflict of interest (Br. 14). This conflict of interest is one factor that must be weighed in determining whether there has been an abuse of discretion.

This order finds that there is insufficient evidence in the administrative record to determine the weight of defendant's conflict of interest. Defendant relied in part on a report from a third-party AMR reviewer who concluded that A.A.'s full stay at the residential treatment facility was not medically necessary. Yet, defendant also contends that the "ultimate decision as to the medical necessity of A.A.'s treatment" was made by Dr. Kato, a medical director at Blue Shield (Reply 10). Viewed in the light most favorable to the plaintiff, defendant's own medical director may have a stronger predisposition toward improperly denying claims than the AMR

4

reviewer. The administrative record does not reveal the extent to which defendant based its final decision on the AMR report, as opposed to the judgment of Dr. Kato. This is sufficient to raise a genuine dispute as to how much weight to give defendant's conflict of interest.

### 2. GENUINE DISPUTE REGARDING WHETHER BLUE SHIELD APPLIED THE PLAN DEFINITION OF MEDICAL NECESSITY.

The parties also dispute whether defendant followed its own guidelines when it determined that A.A.'s continued residential treatment was not medically necessary. Defendant's plan contains a specific definition of medical necessity. The AMR reviewer's report states that under the "Milliman Guidelines," A.A. could have been treated at a lower level of care after ten days at the residential facility (AR 1783). These guidelines are separate from the Blue Shield plan and are not a part of the administrative record.

Defendant argues that even without these guidelines, all that matters is that the AMR reviewer reached this conclusion. Not so. Without the guidelines used by the AMR reviewer, it is not possible to determine whether the reviewer's methodology was consistent with the definition of medical necessity in the Blue Shield plan, or whether it was reasonable for defendant to rely on the reviewer's analysis. This lacuna is significant, and it precludes summary judgment.

### 3. DEFENDANT'S FAILURE TO IDENTIFY ITS MEDICAL REVIEWER.

At an August 23 case management conference, the Court urged defendant to provide the identity of the AMR reviewer to plaintiff. Nevertheless, defendant has failed to identify the name of the AMR doctor who reviewed the appeal. ERISA's plain language states that a "reasonable opportunity for a full and fair review of a claim" requires "identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination." C.F.R. § 2560.503-1(h)(3).

Plaintiff complains that without the identify of the reviewer, questions such as whether the reviewer is actually board certified, or whether the reviewer has ever been suspended from practice by a medical board cannot be answered. The Court agrees. Viewed in the light most favorable to the plaintiff, the answers to these questions may show whether defendant reasonably

5

relied on the AMR reviewer's conclusions, and whether defendant adequately investigated plaintiff's claim.

Defendant contends that the practice of not identifying third-party reviewers by name is "regularly approved by the courts" (Reply Br. 10). How counsel could have gleaned this proposition from *Simonia v. Glendale Nissan/Infiniti Disability Plan*, *Lukas v. United Behavioral Health*, and *Gaines v. Guardian Life Insurance Company of America* is a mystery to the Court. In *Simonia*, our court of appeals assumed without deciding that the failure to identify a medical reviewer violates ERISA. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 378 Fed. App'x 725, 727 (9th Cir. 2010). The district courts in *Lukas* and *Gaines* both affirmatively concluded that ERISA requires disclosure of the name of a reviewer. *Lukas v. United Behavioral Health*, No. 09-2423, 2011 WL 1459157, at *17 (E.D. Cal. Apr. 15, 2011) ("The Plan Administrator did not provide the name of the physician to plaintiffs. This resulted in a violation of ERISA procedures."); *Gaines v. Guardian Life Ins. Co. of Am.*, No. 09-1762, 2010 WL 1759579, at *7 (D. Md. Apr. 30, 2010) ("[T]he Court believes that the statute's plain language requiring identification of a medical consultant compels an administrator to reveal more than merely the consultant's qualifications.").

These cases do not approve of withholding the identity of a third-party reviewer. Rather, they recognize that a failure to identify a medical reviewer violates ERISA, and that any resulting prejudice to the plaintiff is a factor that should be considered by a reviewing court. In the absence of prejudice, a plan administrator may have substantially complied with ERISA despite failing to properly disclose the name of a medical reviewer. Whether plaintiff has in fact suffered any prejudice from defendant's refusal to provide this information remains to be seen.

**4.    PLAINTIFF'S REQUEST FOR DISCOVERY.**

As explained above, there are unanswered questions as to defendant's conflict of interest, defendant's basis for denying plaintiff's claim, the methodology employed in evaluating the claim, and the role of the AMR reviewer. Defendant has also failed to identify its AMR reviewer. Whether this refusal has prejudiced plaintiff is unknown. Some discovery is warranted within this limited scope.

6

Plaintiff has also requested discovery into the third-party reviewer's track record for approving claims, and communications with defendant during the review process. This Court has previously found that discovery into the possible bias and track records of third-party reviewers may be appropriate in ERISA cases. *See, e.g.*, *Tarasovsky v. Stratify, Inc. Group Short and Long Term Disability Plan*, No. 11-3359, 2012 WL 1831507, at *6 (N.D. Cal. May 18, 2012) (Alsup, J.); *Carten v. Hartford Life and Acc. Ins. Co.*, No. 10-4019, 2011 WL 768683, at *4 (N.D. Cal. Feb. 28, 2011) (Alsup, J.). Within reasonable limits, discovery regarding the AMR reviewer's possible bias and track record will be allowed.

## CONCLUSION

The parties' cross-motions for summary judgment are **DENIED** without prejudice. The November 29 hearing is **VACATED**.

The following limited discovery regarding the basis for the AMR reviewer's decision, the AMR reviewer's possible bias and track record, defendant's conflict of interest, and defendant's basis for denying the claim will be allowed. Plaintiff may serve ten narrow interrogatories without sub-parts and fifteen document requests that are narrowly drawn. Plaintiff may also take five one-day depositions. Discovery related to bias and conflict of interest is not limited to A.A.'s specific case. The discovery may not be used to supplement the record with additional medical documentation supporting plaintiff's claim.

This discovery must be completed by **MARCH 31, 2013**. A case management conference will be held at **11:00 A.M. ON APRIL 4, 2013**, in order to set an evidentiary hearing or determine how else to proceed.

**IT IS SO ORDERED.**

Dated: November 26, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7